UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT CHATTANOOGA

|  |  |  |
|---|---|---|
| | ) | |
| DANNY M. WILCOX, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| v. | ) | No. 1:07-CV-15 / 1:05-CR-81 |
| | ) | Chief Judge Curtis L. Collier |
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Respondent. | ) | |
| | ) | |

**MEMORANDUM**

*Pro se* petitioner Danny Wilcox ("Petitioner") filed a motion to vacate, set aside, or correct

sentence pursuant to 28 U.S.C. § 2255 (Court File No. 23). Pursuant to the Court's Order (Court

File No. 25), the United States filed a response (Court File No. 31). This Court sentenced Petitioner

to 65 months in prison on January 6, 2006, after he pleaded guilty to possession of a pipe bomb by

a convicted felon in violation of 18 U.S.C. § 922(g)(1). Judgment was entered on January 19, 2006,

and Petitioner timely filed his § 2255 motion on January 18, 2007 (Court File No. 23). Petitioner

claims (1) ineffective assistance of counsel, (2) his plea of guilty was involuntary and unknowing,

and (3) violation of his plea agreement.

The Court finds the materials thus submitted, together with the record of the underlying

criminal case (1:05-CR-81-1), conclusively show Petitioner is not entitled to relief on any of the

claims asserted in his petition. Accordingly, the Court will decide this matter without an evidentiary

hearing, *see United States v. Todaro*, 982 F.2d 1025, 1028 (6th Cir. 1993), and will **DENY**

Petitioner's motion for the following reasons.

## I.    RELEVANT FACTS AND PROCEDURAL HISTORY

The following pertinent facts are taken from the offense conduct section provided in the

Presentence Investigation Report ("PSR"):

9.      On November 5, 2004, agents of the Bureau of Alcohol, Tobacco, and Firearms received a tip that two individuals were in possession of a pipe bomb and planned to use the device in a murder. Jerry Adams and Glenda Cross of Cleveland, Tennessee, possessed the pipe bomb and planned to use the device on Ms. Cross's ex-husband, Ricky Slaven.

10.     Agents went to the residence of Mr. Adams and Ms. Cross, and came in contact with Mr. Adams. Mr. Adams initially did not allow agents into his home, but after his arrest, he gave consent. Agents seized a pipe bomb they found hidden in a boot on a shelf in Mr. Adams' hallway.

11.     After his arrest, Mr. Adams consented to an interview with agents. He told agents that he got the bomb from Danny Wilcox (the defendant) approximately 4 to 5 months prior to his arrest. Mr. Adams told agents that Glenda Cross had told Mr. Wilcox several times that she wanted to kill her ex-husband, Ricky Slaven. Mr. Adams told agents that Mr. Wilcox informed him that the bomb was filled with black powder and to wire the bomb to a vehicle's headlight and put one wire on top and one wire on the bottom of the connector and then place the bomb on the vehicle's frame or grill. At the time Mr. Adams took possession of the pipe bomb, he and the defendant had been using methamphetamine.

12.     The defendant's actions in this case have resulted in Attempted Murder charges in Bradley County, Tennessee. These charges have been no billed.

(PSR at pp. 3-4).

On June 30, 2005, Petitioner was indicted in a five-count indictment and on October 6, 2005,

he pleaded guilty to Count One, knowing possession of a pipe bomb by a convicted felon, in

violation of 18 U.S.C. § 922(g)(1).  There was no written plea agreement, but the United States

2

submitted a factual basis supporting Petitioner's plea (Court File No. 14). In this factual basis, Petitioner "admitted he made the bomb and two others," "described in detail how he made them" and "that he gave one to [Codefendant] Adams after they had been smoking methamphetamine together" (*id.* at p. 2, ¶ e).

Petitioner agreed to the above facts at his rearraignment hearing, but denied the statement in the Factual Basis of his knowledge the codefendants discussed killing Codefendant Cross's ex-husband (Court File No. 28 ("Rearraign. Tr.") at p.10). The interviews of Petitioner were videotaped (Court File No. 14 at p. 2, ¶ f). Codefendant Adams had pleaded guilty in state court to charges of conspiracy to commit murder and possession of a pipe bomb and had agreed to testify against Petitioner (*id.* p. 2, ¶ i).

The probation officer determined Petitioner's base offense level was 22 pursuant to USSG § 2K2.1(a)(4)(B) (PSR at ¶ 17). In calculating his Guideline range, the probation officer applied a two-level enhancement under § 2K2.1(a)(4)(B) because the offense involved a destructive device, and a four-level enhancement under § 2K2.1(b)(5) because Petitioner had reason to know the pipe bomb would be used in connection with a felony (*id*. at ¶¶ 18-19, p.5). Finally, the probation officer cross-referenced to § 2A1.5, conspiracy to commit murder, pursuant to § 2K2.1(c)(1), resulting in an offense level of 28. Petitioner originally objected to the four-level enhancement and the cross-reference to the conspiracy to commit murder provision, but withdrew all his objections at the sentencing hearing (Court File No. 27 ("Sentencing Tr.") p. 3). After applying a three-level reduction for acceptance of responsibility under § 3E1.1(a) and (b), Petitioner's total offense level was 25 with a Guideline range of imprisonment of 57 to 71 months based on his criminal history category of I.

At the sentencing hearing, Petitioner asked the Court to impose a sentence within the Guidelines and as mitigating factors, cited his substance abuse, mental health and emotional problems, and efforts to support himself despite a lack of education (Sentencing Tr. pp. 4-5). This Court considered the mitigating factors, but also addressed the seriousness of the offense and need to protect the public.

> The Court cannot conceive of any circumstance where if someone approached another person to [supply them with a pipe bomb] you would not have grave concerns about what the person was going to do with that object. I don't know if there is any legitimate use that would have been made of a pipe bomb that would have allayed anyone's suspicions or concern. It is to your benefit that no one was killed as a result of your actions. . . . I know there's a dispute about whether you did or did not know that this pipe bomb was about to be wired to the automobile of a person and kill the person when the person started the automobile. So the Court is not determining that you actually knew about that specific usage. The Court is more concerned about the extreme recklessness in supplying a pipe bomb to someone under circumstances where it should have been pretty obvious that the other person was up to no good, even if you did not know specifically what the person was planning on doing specifically with it.

(Sentencing Tr. p. 6).

Although the Court imposed a sentence in the middle of the advisory range after determining it to be an appropriate sentence, it specifically indicated "had the Court determined a different sentencing guideline range applied," it still would have imposed the same sentence under the factors stated in § 3553(a). In addition to the term of imprisonment of 65 months, the Court recommended the 500-hour drug abuse treatment program, and a term of supervised release of three years. After being advised of his right to appeal and that counsel would be appointed to represent him on appeal, Petitioner indicated he had no objection to the sentence not previously raised (Sentencing Tr. pp.

9-10).

## II.   STANDARD OF REVIEW

Section 2255 of Title 28 of the United States Code permits a prisoner in custody under sentence of a federal court to move the court which imposed the sentence to vacate, correct, or set aside that sentence, on the grounds:

> the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack . . . .

28 U.S.C. § 2255. This Court has jurisdiction under 28 U.S.C. § 1331. Petitioner has the burden of establishing any claim asserted in the petition. *See Bowers v. Battles*, 568 F.2d 1, 5 (6th Cir. 1977); *Mayes v. United States*, 93 F. Supp. 2d 882, 886 (E.D. Tenn. 2000). It is a "well-settled principle that to obtain collateral review relief a prisoner must clear a significantly higher hurdle than would exist on direct appeal." *Fair v. United States*, 157 F.3d 427, 430 (6th Cir. 1998) (citing *United States v. Frady*, 456 U.S. 152, 166 (1982)).

Where a constitutional error is alleged, in order to obtain relief under § 2255, the record must reflect a constitutional error of such magnitude it had a substantial and injurious effect or influence on the proceedings. *See Brecht v. Abrahamson*, 507 U.S. 619, 637 (1993); *Watson v. United States*, 165 F.3d 486, 488 (6th Cir. 1999). In order to prevail on a § 2255 motion alleging a non-constitutional error, a petitioner must show a "fundamental defect in the proceedings which necessarily results in a complete miscarriage of justice or an egregious error violative of due process." *Gall v. United States*, 21 F.3d 107, 109 (6th Cir. 1994). Thus, "[a] motion brought under § 2255 must allege one of three bases as a threshold standard: (1) an error of constitutional

5

magnitude; (2) a sentence imposed outside the statutory limits; or (3) an error of fact or law that was so fundamental as to render the entire proceeding invalid." *Weinberger v. United States*, 268 F.3d 346, 351 (6th Cir. 2001).

## III.    DISCUSSION

### A.    Ineffective Assistance of Counsel

Petitioner contends his counsel was ineffective because she misrepresented his sentencing range, which influenced him to plead guilty, and abandoned him when he tried to contact her regarding an appeal. Petitioner further asserts but for his counsel's assurance he would receive a sentence within a 41 to 51 month range, with the possibility of a reduction of twelve months for participating in the drug treatment program, he would not have signed the plea agreement and would have instead gone to trial.

The Sixth Amendment provides, in pertinent part, "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to have the Assistance of Counsel for his defense." A defendant has a Sixth Amendment right not just to counsel, but to "reasonably effective assistance" of counsel. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). In *Strickland*, the Supreme Court set forth a two-pronged test for evaluating claims of ineffective assistance of counsel:

> First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable. Unless a defendant makes both showings, it cannot be said that the conviction . . . resulted from a breakdown in the adversary process that renders the result unreliable.

6

466 U.S. at 687.

In considering the first prong of the test set forth in *Strickland*, the appropriate measure of attorney performance is "reasonableness under prevailing professional norms." *Id.* at 688. A defendant asserting a claim of ineffective assistance of counsel must "identify the acts or omissions of counsel that are alleged not to have been the result of reasonable professional judgment." *Id.* at 690. The evaluation of the objective reasonableness of counsel's performance must be made "from counsel's perspective at the time of the alleged error and in light of all the circumstances, and the standard of review is highly deferential." *Kimmelman v. Morrison*, 477 U.S. 365, 381 (1986).

The second prong of the *Strickland* test requires the petitioner to show counsel's deficient performance prejudiced the defense. Thus, "[a]n error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment." *Strickland*, 466 U.S. at 691. The petitioner must show "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. The *Strickland* Court emphasized both prongs must be established in order to meet the claimant's burden, and if either prong is not satisfied the claim must be rejected, stating:

> Although we have discussed the performance component of an ineffectiveness claim prior to the prejudice component, there is no reason for a court deciding an ineffective assistance claim to approach the inquiry in the same order or even to address both components of the inquiry if the defendant makes an insufficient showing on one . . . . If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, which we expect will often be so, that course should be followed. Courts should strive to ensure that ineffectiveness claims not become so burdensome to defense counsel that the entire criminal justice system suffers as a

result.

*Id.* at 697.

In *Hill v. Lockhart*, 474 U.S. 52 (1985), the Court held the two-part *Strickland* test is applicable in the context of guilty pleas. Therefore, the defendant must show defense counsel's representation fell below an objective standard of reasonableness and there was a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial. *Id.* at 58-59. To demonstrate a reasonable probability he would have gone to trial, a defendant is required to present evidence apart from a lone assertion that but for counsel's error he would have pleaded not guilty and gone to trial. *See Parry v. Rosemeyer*, 64 F.3d 110, 118 (3d Cir.1995) ("A defendant alleging ineffective assistance of counsel in the guilty plea context must make more than a bare allegation that but for counsel's error he would have pleaded not guilty and gone to trial."); *United States v. Campbell*, 778 F.2d 764, 768 (11th Cir.1985) (bare allegation that defendant would not have pleaded guilty if her trial counsel had advised her properly is not sufficient to establish prejudice under *Strickland*).

Other than Petitioner's lone assertion he would have gone to trial had his counsel not promised him a lower sentencing range, there is no evidence Petitioner's defense was prejudiced. Rather, the transcript from the rearraignment proceedings clearly demonstrates Petitioner understood his counsel could not promise or guarantee an appropriate sentencing range before the Court accepted his plea of guilty.

> THE COURT: Under the Sentencing Reform Act of 1984, the United
> States Sentencing Commission has issued guidelines
> for judges to consider in determining the sentence in

8

a criminal case. The Court, however, is not bound by these guidelines, and may lawfully impose a sentence upon you up to and including the maximum penalty that Mr. Neff just indicated. Have you and your attorney talked about the possible sentence you might receive and how the sentencing guidelines might apply in your case?

THE DEFENDANT: Yes, sir.

THE COURT: Do you understand that the Court will not be able to determine the guidelines sentence for your case until after a presentence report has been completed by the United States Probation Office and you and the government have had an opportunity to challenge the facts in the report?

THE DEFENDANT: Yes, sir.

THE COURT: Do you understand that it is possible that if you have prior convictions those will increase your sentence under the sentencing guidelines?

THE DEFENDANT: Yes, sir.

THE COURT: Do you also understand that your sentence will be determined by me and that I will consider the sentencing guidelines in setting your sentence but I may also consider other factors after I have received and reviewed the presentence report and heard what you, your attorney, and the government have to say with regards to an appropriate sentence in this case, and that sentence may be more severe or less severe than the sentence called for by the sentencing guidelines?

THE DEFENDANT: Yes, sir.

THE COURT: Do you also understand that under some circumstances you or the government may have the right to appeal any sentence that I impose?

THE DEFENDANT: Yes, sir.

. . .

9

| | |
|---|---|
| THE COURT: | Do you understand that if your sentence is more severe than what you expect, you will still be bound by your sentence and will have no right to withdraw from your guilty plea? |
| THE DEFENDANT: | Yes, sir. |
| THE COURT: | Let me state that again. I'm not sure that I stated that correctly. Do you understand that if the sentence you receive is more severe than what you expect, you will still be bound by your plea and will have no right to withdraw from your guilty plea? |
| THE DEFENDANT: | Yes, sir. |
| | . . . |
| THE COURT: | Okay. Mr. Wilcox, are you offering to plead guilty because you are in fact guilty? |
| THE DEFENDANT: | Sir, I'm guilty of possessing the pipe bomb, you know, me being a – convicted in '85. Yes, I'm pleading guilty to that. |

(Rearraign. Tr. pp. 7-9, 11).

Regardless of any alleged promises by his attorney as to the length of his sentence, this Court went to great effort to ensure Petitioner understood his sentence would be calculated and determined by the Court and his guilty plea would be binding even if the sentence was more severe than he expected. Even if Petitioner initially decided to plead guilty based on erroneous information as to his sentencing range, this does not amount to prejudice where the Court specifically informed him his guidelines range had not been determined and was not binding on the Court. *See Warner v. United States*, 975 F.2d 1207, 1211-12 (6th Cir. 1992) (finding the petitioner was not prejudiced by attorney's erroneous representations of concurrent sentences where the Court specifically informed him the attorney's advice was incorrect).

Petitioner provides no support for his claim that the promise of a sentence between 41 to 51

10

months induced him to sign a plea agreement. There is no plea agreement in this case and the agreed factual basis submitted by the government contained no reference to a sentencing range and was not even signed by Petitioner. Petitioner did sign a Notice of Intent to Plead Guilty (Court File No. 13) and may be misconstruing this as a plea agreement. However, any erroneous belief there was a plea agreement, even a "verbal plea agreement," binding the Court to impose a sentence between 41 to 51 months was addressed in the Court's colloquy referenced above.

Finally, Petitioner contends his counsel abandoned him at a time when he asked for an appeal (Court File No. 24, p. 5). Petitioner claims he was advised his attorney no longer represented him and his calls were subsequently refused by the Public Defender's office (Court File No. 23, p. 4). These claims fail to demonstrate prejudice. Petitioner's counsel resigned from her position after his sentencing and has since relocated (Court File No. 29). Therefore any statement his attorney no longer represented him was true. Petitioner was specifically instructed on his right to an appeal in the sentencing hearing.

> THE COURT: Mr. Wilcox, you have the right to appeal the sentence the Court just announced. If you would like to appeal the sentence, your notice of appeal must be filed within ten days. If you cannot afford counsel to represent you in your appeal, the Court will appoint counsel to represent you. Do you understand your appeal rights as I have stated them?
>
> THE DEFENDANT: Yes, sir.

(Sentencing Tr. p. 9).

In Petitioner's affidavit attached to the motion, he contends he "never filed a notice of appeal because when he contacted [his attorney] at her office she said she was no longer my Attorney" (Court File No. 23 p. 14). Petitioner alleges he was unable to contact his attorney, but provides no

11

assertion his attorney disregarded specific instructions to file a notice of appeal, nor was it objectively unreasonable for counsel to fail to consult with Petitioner regarding an appeal. He raised no objections to the sentence imposed at the sentencing hearing (Sentencing Tr. pp. 9-10) and admitted the conduct which formed the basis for the sentence imposed within the Guidelines. In cases where a defendant has not instructed counsel "one way or the other," counsel has a duty to consult with the defendant about an appeal if either "a rational defendant would want to appeal (for example because there are nonfrivolous grounds for appeal)," or "this particular defendant reasonably demonstrated to counsel that he was interested in appealing." *Roe v. Flores-Ortega*, 528 U.S. 470, 480 (2000). In light of Petitioner's lack of objection to the sentence, his sentence falling within the guidelines, his admission to facts supporting his guilty plea, and the clear instructions on appeal procedure from the Court, it was not objectively unreasonable for counsel to fail to consult with Petitioner regarding an appeal.

Accordingly, the Court finds Petitioner was not denied effective assistance of counsel and this claim is without merit.

### B.      Involuntary Guilty Plea

Petitioner claims his plea of guilty was not knowing, intelligent, or voluntary. Rather, his plea was induced by a false promise of a sentencing range made by his attorney. For the reasons discussed above, the Court made clear to Petitioner that his counsel could not promise or guarantee any sentencing range at the time of his rearraignment. Again, the transcript of the rearraignment proceeding disputes this claim made by Petitioner.

> THE COURT:        Has anyone threatened you or anyone else or forced
>                   you in any way to plead guilty?
>
> THE DEFENDANT:  No, sir.

THE COURT:      Has any officer or agent of the government promised
                or suggested that you will receive a lighter sentence
                or some form of leniency if you plead guilty?

THE DEFENDANT:  No, sir.

(Rearraign. Tr. p. 5).

Pursuant to Fed. R. Crim. P. 11, the Court is required to ask a defendant certain questions to create a record that may insulate the guilty plea in any future appeals and collateral attacks. *Key v. United States*, 806 F.2d 133, 136 (7th Cir. 1986). Petitioner's "declarations in open court carry a strong presumption of verity." *Blackledge v. Allison*, 431 U.S. 63, 73-4 (1977). Rule 11 ensures a colloquy that exposes the defendant's state of mind through personal interrogation. *Baker v. United States*, 781 F.2d 85, 88 (6th Cir. 1986). An examination of the record provides no support for Petitioner's claim his plea was coerced and involuntary. Petitioner told the Court he had an opportunity to discuss his claims with his counsel and was satisfied with her representation, he understood the consequences of his guilty plea, and chose to plead guilty rather than go to trial (Rearraign Tr. pp. 4-5).

Petitioner argues he was incompetent to enter a plea based on his lack of ability to read and write, which required his counsel to read and explain his "plea agreement" to him before he signed it. Competency to enter a guilty plea is defined as "whether the defendant has sufficient present ability to consult with his lawyer with [a] reasonable degree of rational understanding and has a rational as well as factual understanding of the proceedings against him." *Godinez v. Moran*, 509 U.S. 389, 396 (1993) (internal citations omitted). At the rearraignment, Petitioner stated he had completed the sixth grade, had previously been treated for depression, and was not under the influence of drugs, medications, or alcohol (Rearraign. Tr. pp. 2-3). Petitioner stated he understood

13

the factual basis as his counsel read it to him, and clarified for the Court his plea was solely for the possession of the pipe bomb (*id*. pp.10-11). The Court correctly found Petitioner to be "fully competent and capable of entering an informed plea" and Petitioner has failed to dispute this determination.

Accordingly, the Court finds Petitioner's claim of an involuntary guilty plea is not supported by the record and provides no basis for relief.

### C. Violation of Plea Agreement

Petitioner contends, he had a "verbal plea agreement at least" based on his agreement with counsel that by signing a plea agreement he would receive a sentence between 41 and 51 months with an additional 12 months off upon completion of the Bureau of Prisons' drug treatment program. As discussed above, there was no written plea agreement and any promises by Petitioner's counsel of a specific sentence were clearly invalidated by the Court's clear instructions at the rearraignment hearing. Accordingly, Petitioner's claim of violation of plea agreement is without merit.

## IV. CONCLUSION

For the reasons stated above, Petitioner's sentencing was not in violation of the Constitution or laws of the United States, and the motion to vacate, set aside, or correct his sentence pursuant to 28 U.S.C. § 2255 will be **DENIED** (Court File No. 23).

An Order shall enter.